**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**LARRY BOREN**                                                                              **PLAINTIFF**

**V.**                                        **CASE NO. 2:25-CV-2066**

**JOHN GRIFFITH, INDIVIDUALLY**                                              **DEFENDANT**

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Defendant, John Griffith, in his individual capacity only, by and through undersigned counsel, and for his Brief in Support of his Motion for Summary Judgment states:

## I.  INTRODUCTION

The Plaintiff, Larry Boren, filed his Complaint in this action on June 16, 2025.  He alleges that Deputy Griffith retaliated against him in violation of the First Amendment and subjected him to an unlawful seizure in violation of the Fourth Amendment.  On February 11, 2026, Plaintiff amended his Complaint to add a third cause of action for malicious prosecution.  Specifically, Plaintiff claims that Deputy Griffith arrested him without probable cause and made false statements and omitted material facts in connection to Plaintiff's arrest and prosecution.  However, the undisputed facts establish that Deputy Griffith had probable cause, or at a minimum arguable probable cause, to arrest Plaintiff based on Plaintiff's conduct during an active roadside investigation.  Because probable cause defeats Plaintiff's First Amendment, Fourth Amendment, and malicious prosecution claims, and because Deputy Griffith is independently entitled to qualified immunity, summary judgment should be entered in Deputy Griffith's favor on all claims.

1

## II.  FACTS

On April 6, 2024, Deputy Griffith was traveling to work in his Sheriff's Office vehicle on U.S. Highway 64 when he observed a motorcycle traveling approximately 91 miles per hour in a 55 mile per hour speed zone.  As a result, Deputy Griffith initiated a traffic stop and made contact with the driver of the motorcycle, Tommi Nichols.[1]  Ms. Nichols was unable to produce valid registration documentation for the motorcycle, and Deputy Griffith placed her into custody in the back of his patrol vehicle.  Deputy Griffith was the only law enforcement officer present at the scene, and this stop occurred along an active highway with traffic passing on the highway adjacent to the scene.

While Deputy Griffith was inventorying the motorcycle and continuing his investigation, Shawn Boren arrived on the scene in a separate vehicle.  Mr. Boren exited his vehicle and approached Deputy Griffith, informing Deputy Griffith that he was Tammi Nichols' boyfriend.  Deputy Griffith explained the situation to Mr. Boren, answered his questions, and instructed him to return to his vehicle and leave the scene.  Mr. Boren did not comply with those instructions.  Deputy Griffith ultimately placed Mr. Boren into custody as well.  Because Ms. Nichols was already secured in the back of Deputy Griffith's patrol vehicle and no additional officers had arrived, Deputy Griffith had Shawn Boren sit in a grassy area adjacent to the roadway while awaiting another deputy to assist with transport.  Deputy Griffith then resumed his initial investigation involving Ms. Nichols and the motorcycle.

A short time later and before Deputy Griffith completed the investigation into the motorcycle and before he properly secured and processed the scene, Plaintiff arrived at the scene

---

[1] Much of the encounter at issue was recorded by Deputy Griffith's body-worn camera.  Accordingly, the facts set forth herein are established not only by witness testimony, but also by objective video evidence depicting Plaintiff's conduct during the encounter.  *See* Griffith Bodycam Video, attached to Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment as Exhibit A.

of the highway traffic stop. The Plaintiff was not involved in the traffic stop or investigation. *See* Ex. A; Deposition of Larry Boren at 11-12, attached to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment as Exhibit B. At the time of his arrival, Plaintiff understood that law enforcement was conducting an active traffic stop. *See* Ex. B at 11-12. Plaintiff parked across the highway from the stop, exited his truck, crossed the roadway, and walked directly toward the scene while Deputy Griffith was still the only officer present and was actively dealing with multiple unsecured vehicles and individuals on an active highway. *See id.* at 14-15; *see also* Ex. A. Plaintiff first approached and attempted to access Shawn Boren's vehicle, and Deputy Griffith advised Plaintiff that he could not enter the vehicle. *See* Ex. A; Ex. B at 14, 16, 18. Plaintiff remained in close proximity to the scene and began engaging Deputy Griffith verbally while Deputy Griffith continued attempting to manage the roadside investigation and secure the scene. *See* Ex. A; Ex. B at 15-17.

Thereafter, Deputy Griffith repeatedly instructed Plaintiff to leave the scene and return to his vehicle. *See* Ex. A; Ex. B at 18. Plaintiff did not immediately comply. *See* Ex. A; Ex. B at 18, 20. Instead, Plaintiff remained near the scene, continued arguing with Deputy Griffith, and moved around the active roadside area while Deputy Griffith was simultaneously attempting to manage Ms. Nichols and Shawn Boren. *See* Ex. A; Ex. B at 20, 23-24.

Eventually, Plaintiff began walking away toward his truck but stopped in the middle of the highway before reaching it, turned back toward Deputy Griffith, and re-engaged with him from the middle of the roadway rather than leaving the scene. *See* Ex. A; Ex. B at 21, 23. Subsequently, Deputy Griffith ordered Plaintiff to stop, which he initially failed to do, and advised Plaintiff that he was giving lawful commands. *See* Ex. A; Ex. B at 24-26. Plaintiff continued moving and yelling profanities while Deputy Griffith attempted to maintain control of the scene. *See id.*

Plaintiff failed to comply with Deputy Griffith's commands to stop, turn around, and place his hands behind his back before Deputy Griffith attempted to place him into custody. *See id.*

After being detained, Plaintiff continued to be combative and shout profanities in the presence of members of the public. *See* Ex. A; Ex. B at 25-26, 29-30. Throughout the majority of the encounter, Deputy Griffith remained the sole officer on scene and was required to simultaneously monitor Plaintiff, Shawn Boren, Ms. Nichols, passing traffic, and the unsecured roadside environment, including three vehicles, while attempting to complete the traffic stop and maintain scene safety and security.

### III.  SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that a motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). As the United States Court of Appeals for the Eighth Circuit recognizes, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party moving for summary judgment has the initial burden of informing the court of the basis for its motion and identifying the pleadings, admissions, discovery documents and

affidavits it contends show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. However, the moving party does not have the burden of negating the other party's claim. *See id.* The movant meets its burden merely by "pointing out" to the district court that there is an "absence of evidence to support the nonmoving party's case." *Id.* at 325. The nonmoving party must then go beyond its own pleadings to designate specific facts raising a genuine triable issue. *Id.* at 324; *see also Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988).

In order to establish that a genuine issue of material fact exists, the nonmoving party must show that (1) there is a factual dispute; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine. *See RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir. 1995). "[T]he mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." *Becker v. City of Hillsboro, Mo.*, 125 F.4th 844, 851 (8th Cir. 2025) (quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). Stated otherwise, a dispute about a material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. .2022) (stating that a fact is "material" if it may affect the outcome of the suit).

While courts generally view the evidence in the light most favorable to the non-moving party, a court need not adopt a version of events that is "blatantly contradicted by the record" such that no reasonable jury could believe it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Accordingly, where video evidence captures the events at issue, the court should view the facts in

5

the light depicted by the recording rather than a party's contrary characterization of those events. *See id.* at 381.

## IV.  ARGUMENT

This case ultimately turns on a single question:  Whether a reasonable officer in Deputy Griffith's position had probable cause, or at a minimum arguable probable cause, to arrest Plaintiff after Plaintiff voluntarily inserted himself into an active roadside investigation, attempted to access a vehicle involved in that investigation, and repeatedly refused commands to leave while Deputy Griffith was the sole officer on scene.  Because the answer is yes, each of Plaintiff's claims fails as a matter of law.  The event is captured on video footage from Deputy Griffith's body worn camera.  This footage, combined with the admissions of the Plaintiff made during his deposition, permit the Court to determine that there are no issues of material fact and the Plaintiff's claims should be dismissed.  Further, Deputy Griffith's conduct as depicted in the video footage is such that he is entitled to qualified immunity from this suit.

## A.  The Plaintiff's Constitutional Rights Were Not Violated

### 1.  No First Amendment Violation Occurred

Plaintiff first alleges that his arrest violated his First Amendment rights because he was arrested in retaliation for criticizing law enforcement.  To prevail on a First Amendment retaliation claim, a plaintiff must establish:  (1) that he engaged in protected activity; (2) that the government took adverse action that would chill a person of ordinary firmness from continuing that activity; and (3) that the adverse action was motivated, at least in part, by the protected activity.  *See Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 859-60 (8th Cir. 2024).  Plaintiff cannot satisfy either the first or third element.

6

While the First Amendment protects the right to observe police activity occurring in public, that right extends only to observation conducted "at a distance and without interfering" with law enforcement activity.  *See Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020).  It does not protect conduct that interferes with or obstructs an active investigation.  *See Sullivan v. Richardson*, 2026 Ark. App. 145, *7, 2026 WL 599626 (Mar. 4, 2026) (citing Ark. Code Ann. § 5-54-102); *see also Dillon v. Toler*, Case No. 4:19-CV-00219-KGB, 2021 WL 4134341, *4 (E.D. Ark. Sept. 10, 2021) (stating that activity is not protected under the First Amendment when the plaintiff is neither an on-looker nor at a distance).

Here, the undisputed evidence establishes that Plaintiff's conduct extended far beyond protected observation or criticism.  Plaintiff voluntarily drove to the scene of an active traffic stop despite having no involvement in the incident or the investigation.  *See* Ex. B at 11-12.  Upon arrival, he crossed the highway, approached the scene while Deputy Griffith was the sole officer present, and attempted to access a vehicle involved in the stop before Deputy Griffith had secured or inventoried it.  *See* Ex. A; Ex. B at 16-17.  At that time, Deputy Griffith had no way of knowing whether the vehicle contained weapons, contraband, evidence, or other items that could compromise officer safety or the integrity of the investigation.

The video evidence confirms that Plaintiff did not simply observe from a distance.  Rather, the video reflects that Plaintiff repeatedly inserted himself into the investigation by approaching the scene, refusing commands to leave, stopping in the roadway to re-engage with Deputy Griffith, and continuing to yell profanities while Deputy Griffith attempted to secure the scene and manage multiple individuals and vehicles on an active roadway.  *See* Ex. A; *see also* Ex. B at 18, 20, 24-26.  Plaintiff's conduct required Deputy Griffith to divert his attention away from the ongoing investigation and toward Plaintiff's actions.  Under these circumstances, Plaintiff was not acting

7

as a passive observer but was actively interfering with an ongoing investigation. *See Sullivan*, 2026 Ark. App. 145, at *6. Accordingly, Plaintiff cannot establish that the conduct giving rise to his arrest constituted protected activity.

Plaintiff likewise cannot establish that his arrest was motivated by protected speech. The record contains no evidence from which a reasonable jury could conclude that Deputy Griffith arrested Plaintiff because Plaintiff criticized law enforcement or expressed disagreement with Deputy Griffith's actions. Plaintiff admitted during his deposition that Deputy Griffith never stated that Plaintiff was being arrested because of anything he said and never suggested that Plaintiff's criticism was the basis for the arrest. *See* Ex. B at 32-33. Additionally, Plaintiff's speech cannot be viewed in isolation. The undisputed evidence demonstrates that Plaintiff's speech occurred while Plaintiff repeatedly disregarded commands to leave the scene, stood in the middle of an active roadway, and contributed to an already hazardous active roadside investigation. *See* Ex. A; Ex. B at 18, 20, 24-26. The bodycam footage further reflects that Deputy Griffith's concerns centered on Plaintiff's continued presence, refusal to comply with commands, and interference with the investigation, not the content of Plaintiff's speech. *See* Ex. A. Plaintiff's subjective belief that Deputy Griffith was offended by criticism or profanity is insufficient to create a genuine issue of material fact regarding retaliatory motive. *See Watson v. Boyd*, 119 F.4th 539, 559 (8th Cir. 2024).

Further, the existence of probable cause independently defeats his retaliatory arrest claim. *See Nieves v. Bartlett*, 587, U.S. 391, 398-99 (2019). As more fully discussed below, Deputy Griffith had, at a minimum, arguable probable cause to arrest Plaintiff based on Plaintiff's conduct during the roadside encounter. Plaintiff has also produced no evidence that he falls within the narrow exception recognized in *Nieves*. As a result, Plaintiff cannot establish that he was arrested

because of protected speech as opposed to because of conduct that a reasonable officer could conclude violated Arkansas law.

### 2. No Fourth Amendment Violation Occurred

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause. *See Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2001); *Sullivan*, 2026 Ark. App. 145 at *5. Probable cause exists when the totality of the circumstances would lead a reasonable person to believe that the suspect has committed or is committing an offense. *See Borgman*, 646 F.3d at 523 (citing *Fisher v. Wal-Mart Stores, Inc.*, 618 F.3d 811 (8th Cir. 2010)). Under Arkansas law, a person commits the offense of obstructing governmental operations if he knowingly obstructs, impairs, or hinders the performance of a governmental function. *See* Ark. Code Ann. § 5-54-102(a). A governmental function includes any activity a public servant is legally authorized to undertake on behalf of a governmental entity. *See Thorpe v. Webb*, 2020 WL 1560299, *9 (W.D. Ark. Mar. 31, 2020) (citing Ark. Code Ann. § 5-54-101(4)).

Arkansas courts have recognized that interference with an ongoing investigation can provide probable cause for obstruction. *See Sullivan*, 2026 Ark. App. 145 at *6 (citing *Nelson v. State*, 2013 Ark. App. 421, 2013 WL 3282946 (Ark. App. June 26, 2013)). In *Sullivan*, the Arkansas Court of Appeals held that a bystander who approached an active police encounter involving a third party, engaged the officer, and refused commands to leave was not acting as a "silent, distant observer" but was affirmatively interfering with an ongoing investigation. *See id.* at *1-3. The *Sullivan* Court emphasized that such conduct diverted the officer's attention away from the original suspect and created a safety risk. *See id.* Similarly, in *Ehlers v. City of Rapid City*, the Eighth Circuit concluded that an individual's physical presence, close proximity to an officer, and refusal to comply with commands provided at least arguable probable cause for an

9

obstruction-related offense.  *See* 846 F.3d 1002, 1007 (2017).  The Eighth Circuit also found officer safety to be a significant factor in its analysis, noting that a reasonable officer would have considered the possibility that the plaintiff could have produced a weapon during the encounter. *See id.* at 1009.  These cases recognize that officers engaged in active investigations may take reasonable steps to maintain scene control, ensure safety, and prevent third parties from interfering with ongoing law enforcement activity.

The undisputed facts in this case present an even stronger basis for probable cause.  Deputy Griffith was conducting an active roadside investigation involving a speeding motorist who was already in custody, another individual who had also refused commands, multiple unsecured vehicles, passing highway traffic, and no backup officers at the time Plaintiff arrived.  Plaintiff, who was not involved in the traffic stop, voluntarily drove to the scene, crossed the highway, approached the investigation, and attempted to access a vehicle involved in the stop before it had been secured or inventoried.  *See* Ex. B at 11-17.  Deputy Griffith had no way of knowing at that time whether the vehicle contained weapons, contraband, evidence, or other items that could jeopardize the safety of those at the scene or the integrity of the investigation.  The bodycam recording further confirms that Plaintiff repeatedly refused commands to leave, stopped in the roadway to re-engage with Deputy Griffith after beginning to depart, continued shouting profanities during the encounter, and failed to immediately comply with commands when Deputy Griffith attempted to detain him.  *See* Ex. A; Ex. B at 18-26.

These facts are materially indistinguishable from *Sullivan* and closely analogous to *Ehlers*. Like the plaintiffs in those cases, Plaintiff physically inserted himself into active police activity, disregarded commands intended to maintain scene control and diverted the officer's attention away from the ongoing investigation.  Plaintiff admitted during deposition that Deputy Griffith

10

repeatedly instructed him to leave and to stop, that he understood those commands, that nothing prevented him from complying with the commands. *See* Ex. B at 18-20, 24-26. Nevertheless, Plaintiff continued speaking, moving about the scene, and re-engaging with Deputy Griffith. *See id.*; *see also* Ex. A. Under the totality of these circumstances, a reasonable officer could conclude that Plaintiff was obstructing governmental operations, creating a hazardous condition, and engaging in disorderly conduct. At a minimum, Deputy Griffith possessed arguable probable cause to make an arrest.

Moreover, the constitutionality of an arrest does not depend on whether probable cause existed for the precise offense identified by the officer or ultimately pursued by the prosecutor. An arrest is valid so long as the facts known to the officer establish probable cause of any criminal offense. *See Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004). Thus, even if Plaintiff could establish a factual dispute regarding one asserted basis for arrest, summary judgment remains appropriate because the undisputed facts establish, at a minimum, arguable probable cause for other offenses arising from Plaintiff's conduct during the encounter, including, but not limited to, resisting or refusing to submit to arrest. *See Galarnyk v. Fraser*, 687 F.3d 1070, 1075-76 (8th Cir. 2012).

### 3. Plaintiff Cannot Establish a Malicious Prosecution Claim

Plaintiff also asserts a claim for malicious prosecution under 42 U.S.C. § 1983. To prevail on this claim, Plaintiff must establish, among other things, that Deputy Griffith caused criminal proceedings to be initiated against him without probable cause. *See Thompson v. Clark*, 596 U.S. 36, 43-44 (2022); *Livers v. Schneck*, 700 F.3d 340, 355-56 (8th Cir. 2012). Additionally, Plaintiff must prove a causal connection between the alleged constitutional violation and the resulting

11

prosecution. *See Hartman v. Moore*, 547 U.S. 250, 260-63 (2006). Plaintiff cannot satisfy either requirement.

As discussed above, Deputy Griffith possessed at least arguable probable cause to arrest Plaintiff. The undisputed evidence shows that Plaintiff voluntarily inserted himself into an active roadside investigation, repeatedly refused commands to leave and stop, re-engaged with Deputy Griffith after beginning to depart, and failed to immediately comply with commands during the detention process. These facts provided an objectively reasonable basis to believe Plaintiff had committed, among other offenses, obstructing governmental operations and disorderly conduct. Because probable cause existed, Plaintiff's malicious prosecution claim necessarily fails.

The prosecutor's subsequent dismissal of the charges does not alter that conclusion. The existence of probable cause is evaluated based upon the facts known to the officer at the time of arrest, not the ultimate disposition of the criminal case. *See McDougal v. Odom*, 850 F. Supp. 784, 785 (E.D. Ark. 1994) (finding that the ultimate nolle prosequi of a charge "is of no consequence in the determination of the validity of [an] arrest"); *see also Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993) (stating that the fact that a person is later found innocent is not material to the question of whether probable cause existed at the time of arrest). Consequently, the dismissal of the charges does not establish a lack of probable cause or otherwise demonstrate wrongdoing by Deputy Griffith. *See Occhino v. United States*, 686 F.2d 1302, 1311 (8th Cir. 1982) (stating that the reversal or termination of prosecution does not, standing alone, establish an officer's liability); *Patrick v. Tyson Foods, Inc.*, 2016 Ark. App. 221, *12-13, 489 S.W3d 683, 693 (2016) (indicating that the dismissal of charges does not, by itself, transform conduct into actionable misconduct); *Sundeen v. Kroger*, 355 Ark. 138, 143, 133 S.W.3d 393, 396 (2003) (concluding that a plaintiff

12

who points only to a dismissal of charges has not carried the burden of proving the absence of probable cause).

Plaintiff's malicious prosecution claim also fails because he has produced no evidence that Deputy Griffith knowingly supplied false information, omitted material facts, or otherwise improperly influenced the prosecutor's charging decision and admitted that no such evidence exists. To the contrary, Plaintiff admitted during deposition that he possesses no evidence that Deputy Griffith falsified information or misled the prosecutor in any way. *See* Ex. B at 34-35. The undisputed evidence instead reflects that the prosecutor exercised independent judgment regarding whether to pursue criminal proceedings. Absent evidence that Deputy Griffith improperly caused the prosecution to proceed, Plaintiff cannot establish the causation element of his malicious prosecution claim. Accordingly, because probable cause existed and because Plaintiff cannot establish that Deputy Griffith improperly caused the prosecution, Deputy Griffith is entitled to summary judgment on Plaintiff's malicious prosecution claim.

## B. Deputy Griffith Is Entitled to Qualified Immunity

Even if the Court concludes that a constitutional violation could arguably be established, Deputy Griffith is nevertheless entitled to qualified immunity. Qualified immunity shields government officials from civil liability unless their conduct violates a constitutional right that was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In determining whether qualified immunity applies, courts consider: (1) whether the facts establish a constitutional violation and (2) whether the right allegedly violated was clearly established at the time of the challenged conduct. *See Saucier v. Katz*, 533 U.S. 194. 200-201 (2001). Courts may address either prong first. *See*

*Pearson*, 555 U.S. at 236.  The burden rests with Plaintiff to establish both. *See Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016).

As previously discussed, the undisputed facts do not establish any constitutional violation. However, even assuming otherwise, Plaintiff cannot demonstrate that Deputy Griffith violated a clearly established right.  The Supreme Court has repeatedly emphasized that clearly established law must be defined with specificity and particularity. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004).  The dispositive question is whether existing precedent placed the constitutional question "beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).  Plaintiff cannot satisfy that demanding standard.  No precedent clearly establishes that a bystander has a constitutional right to approach an active roadside investigation, attempt to access a vehicle involved in that investigation, repeatedly disregard commands to leave, stop in the roadway to re-engage with the officer, and continue interfering with scene control without risking arrest. *See Chestnut*, 947 F.3d at 1090; *Ehlers*, 846 F.3d at 1009; *Sullivan*, 2026 Ark. App. at *6-7.

Plaintiff's Fourth Amendment claim fails for the additional reason that Deputy Griffith possessed, at a minimum, arguable probable cause to arrest him.  Qualified immunity applies whenever an objectively reasonable officer could have believed probable cause existed under the circumstances confronting the officer at the time. *See Borgman*, 646 F.3d at 523.  Here, Deputy Griffith faced a lone-officer roadside investigation involving multiple individuals, multiple vehicles, and passing highway traffic when Plaintiff repeatedly inserted himself into the encounter and disregarded commands intended to maintain scene control.  At a minimum, officers of reasonable competence could disagree regarding whether Plaintiff's conduct constituted

14

obstruction, disorderly conduct, or another arrestable offense. That is sufficient to establish qualified immunity.

Nor can Plaintiff avoid qualified immunity by disputing whether probable cause existed for a particular offense or by merely alleging an improper motive. As stated above, an arrest is constitutionally reasonable so long as the facts known to the officer establish probable cause for any criminal offense. *See Devenpeck*, 543 U.S. at 153-55. Moreover, probable cause and qualified immunity are objective inquiries that do not turn on an officer's subjective intent. *See Whren v. United States*, 517 U.S. 806, 813 (1996). Thus, even accepting Plaintiff's allegations regarding Deputy Griffith's motives, a reasonable officer could conclude that Plaintiff's conduct supplied at least arguable probable cause for arrest. Qualified immunity exists precisely for circumstances such as these—where an officer confronting a rapidly evolving encounter must make real-time decisions regarding scene activity, safety, and compliance with lawful commands. Because existing precedent did not place the alleged constitutional violation beyond debate, Deputy Griffith is entitled to qualified immunity on all claims.

### V. CONCLUSION

The material facts of this case are not genuinely disputed. The bodycam video, Plaintiff's own testimony, and the remaining record establish that Plaintiff voluntarily inserted himself into an active roadside investigation, attempted to access a vehicle involved in that investigation, repeatedly refused commands to leave and to stop, re-engaged with Deputy Griffith after beginning to depart, and continued interfering with Deputy Griffith's efforts to secure the scene while Deputy Griffith was the only officer present. Under these circumstances, Deputy Griffith possessed at least arguable probable cause to arrest Plaintiff. As a result, Plaintiff cannot establish a First Amendment retaliatory arrest claim, a Fourth Amendment unlawful seizure claim or a malicious

prosecution claim under 42 U.S.C. § 1983. Plaintiff similarly cannot establish that Deputy Griffith improperly caused criminal proceedings to be initiated or pursued against him or that any clearly established constitutional right was violated. Further, even if the Court were to conclude that a constitutional violation could arguably be established, Deputy Griffith is entitled to qualified immunity because existing precedent did not place the alleged unlawfulness of his conduct beyond debate. At a minimum, a reasonable officer confronted with the circumstances presented here could conclude that Plaintiff's conduct supplied at least arguable probable cause for arrest.

WHEREFORE, Plaintiff's claims fail as a matter of law, and Deputy Griffith respectfully requests that his Motion for Summary Judgment be granted, that Plaintiff's claims be dismissed with prejudice, and that the Court award Deputy Griffith all other just and proper relief to which he is entitled, including attorneys' fees and costs.

Respectfully submitted,

**DEFENDANT**

BY:    Thomas N. Kieklak (Ark. Bar No. 92262)
Heather Owens (Ark. Bar No. 2001151)
**HARRINGTON, MILLER, KIEKLAK,**
**EICHMANN & BROWN, P.A.**
4710 S. Thompson, Suite 102
Springdale, Arkansas 72764
Tel.: 479-751-6464
Fax: 479-751-3715
E-mail: tkieklak@arkansaslaw.com
E-mail: howens@arkansaslaw.com

## CERTIFICATE OF SERVICE

I, Thomas N. Kieklak, do hereby certify that on the 22nd day of June 2026, a true and correct copy of the above and foregoing was filed with the Clerk of the Court via electronic filing which shall send notification of the same to all counsel of record.

Thomas N. Kieklak

16